I cannot agree that the urine test that was the subject of the motion to suppress was taken pursuant to a routine medical examination.
Radford was admitted to the emergency room at 9:00 a.m. on the morning of March 25, 1986. Upon his admission, there were police officers present at the emergency room, and Dr. Goodloe, the treating physician, testified that they made it clear that they wanted to determine whether Radford was driving under the influence of some chemical.
As the majority opinion states, Officer Hendrix made it clear that she specifically thought that Radford was under the influence of some chemical and that she wanted Dr. Goodloe to examine him to determine if her suspicions were correct. Dr. Goodloe stated that he did not do anything to assist Officer Hendrix.
However, that conversation between Goodloe and Hendrix took place at 11:20 a.m., and the urine test was not ordered until 2:00 p.m., some five hours after Radford's admission to the emergency room and almost three hours after Goodloe's discussion with Hendrix.
The urine test was not conducted until 12:00 midnight and the analysis was not conducted until the following day. No medical treatment was provided Radford by the treating physician after the drug screen was ordered.
It would appear that the urine test was taken by the hospital for some purpose other than a routine medical examination by Dr. Goodloe.
This case would bear a closer look on other issues to determine the propriety of the admission of the results of the urine screen, but, regarding the manner in which the majority resolves the issue, I dissent.
JONES, J., concurs.